UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Michael Neudecker,

      Plaintiff,

v.                                                                    Civ. No. 02-4099 (JNE/JGL)
                                                                 ORDER

Boisclair Corporation,

      Defendant.

---

Thomas B. James, Esq., James Law Office, appeared for Plaintiff Michael Neudecker.

Bradley D. Hauswirth, Esq., and Norman I. Taple, Esq., Wagner, Falconer & Judd, Ltd., appeared for Defendant Boisclair Corporation.

---

Michael Neudecker brought this action against Boisclair Corporation, the owner of an apartment building where he wants to live, alleging violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Supp. 2005), and the Fair Housing Act (FHA), 42 U.S.C. §§ 3601-3619 (2000).[1] The case is before the Court on Boisclair's motion for summary judgment. For the reasons set forth below, the Court grants the motion.

## I.     BACKGROUND

Neudecker suffers from obsessive-compulsive disorder (OCD). He lived at Penn Place Apartments, a building owned by Boisclair, in a Section 8 subsidized apartment for

---

[1] Neudecker also brought claims under the Privacy Act of 1974, 5 U.S.C. § 552a (2000), and the Minnesota Government Data Practices Act, Minn. Stat. §§ 13.01-13.99 (2002). By Order of February 21, 2003, the Court dismissed those claims and denied Neudecker's motion to amend his Complaint to recast those claims as a common law invasion-of-privacy claim. On appeal, the Eighth Circuit ordered the Court to grant Neudecker leave to amend his complaint. *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 365 (8th Cir. 2003). Neudecker filed a motion to amend, but subsequently withdrew his motion. He has since conceded that he has no claim for invasion of privacy. Accordingly, the only claims before the Court are Neudecker's claims under the Rehabilitation Act and the FHA.

1

approximately twenty-three years. During the course of his tenancy, Neudecker asserts that tenants harassed him about his OCD and that Boisclair refused to address the harassment and retaliated against him after he complained about it. Neudecker contends that the stress of living at Penn Place caused him to abuse food and alcohol, which damaged his liver and other organs. He left Penn Place in 2002.

## II.   DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Neudecker asserts claims under the FHA and the Rehabilitation Act for retaliation and disability harassment. "The FHA prohibits discrimination, based on handicap, against any person with respect to the rental of a dwelling or the provision of related services or facilities." *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 363 (8th Cir. 2003) (citing 42 U.S.C. § 3604(f)(2)). "The Rehabilitation Act prohibits discrimination 'under any program or activity receiving

[F]ederal financial assistance' against any otherwise qualified individual with a disability, solely because of his disability." *Id.* (quoting 29 U.S.C. § 794(a)).

**A.     Disability Harassment**

Neudecker alleges that at unspecified frequencies during the course of his tenancy, other residents, including children of Boisclair managers, harassed him by making unwanted and repeated telephone calls to him; ringing his doorbell or knocking on his door and then running away; making offensive gestures; calling him names such as "psycho"; posting a threatening note on his door signed "The Demon that will haunt you" (the Demon note); shining and holding flashlights on him; and peeking into his window. Neudecker further alleges that Boisclair refused to take remedial action when he complained about this conduct and, as a result, he was forced to endure a hostile housing environment.

The FHA and the Rehabilitation Act prohibit disability harassment in the housing context. *Id.* at 364. To prevail on his hostile housing environment claim, Neudecker must establish that: (1) he is a qualified individual with disability; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to deprive him of his right to enjoy his home; and (5) Boisclair knew or should have known of the harassment in question and failed to take prompt remedial action. *See id.* at 365.[2] Boisclair concedes for purposes of this motion that Neudecker is a qualified individual with a disability and that he was subject to unwelcome harassment. Accordingly, only the third, fourth, and fifth elements of Neudecker's hostile environment claim are in dispute.

---

[2]     To prevail on his Rehabilitation Act claim, Neudecker must also demonstrate that Boisclair is a recipient of federal funding. *See* 29 U.S.C. § 794(a). Boisclair concedes that it receives federal funds.

3

The Court first considers whether the tenants' harassment of Neudecker was based on his disability. Neudecker asserts that Boisclair coerced his father in 1979 into revealing that Neudecker suffered from a mental disability. According to Neudecker, Boisclair managers revealed his medical information to tenants, who have been sharing the information with each other, their children, and new tenants throughout his twenty-three year tenancy. Neudecker avers that, given the tenants' knowledge of his mental disability, it is reasonable to infer that they were harassing him because of that disability.

Drawing all reasonable inferences in favor of Neudecker, the Court concludes that a factfinder could reasonably find that the Demon note and the instances where tenants called him "psycho" were instances of harassment based on his disability. These incidents inherently suggest a desire to harass one suffering from a mental disability. They are, therefore, potentially actionable. On the other hand, Neudecker has not presented the Court with any evidence tending to demonstrate that the phone calls, doorbell ringing, unspecified offensive gestures, flashlight shining, or window peeking were anything other than simple teasing unrelated to his OCD. These acts might be mean-spirited, but they are not inherently discriminatory. Neudecker has not offered any admissible evidence that the tenants performing these acts knew that he suffered from OCD. Nor has he described the context of the harassment in sufficient detail that would allow a factfinder to reasonably conclude that they were based on his disability. He offers only his bare allegations. Accordingly, the Court finds that this conduct is not actionable. *See Palesch v. Mo. Comm'n on Human Rights*, 233 F.3d 560, 567-68 (8th Cir. 2000); *Williams v. Thomson Corp.*, Civ. No. 00-2256, 2003 WL 1571559, at *11 (D. Minn. Mar. 21, 2003).

The Court next turns to the issue of whether Neudecker has satisfied the fourth element of his hostile environment claim. To be actionable, the harassment must be based on his

4

disability and be both subjectively and objectively offensive. *Cf. Peterson v. Scott County*, 406 F.3d 515, 523-24 (8th Cir. 2005) (hostile work environment claim). To determine whether harassment is objectively severe or pervasive, a court considers: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with a tenant's ability to enjoy his home. *See DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996). Disability harassment standards "are demanding—to be actionable, conduct must be extreme and not merely rude or unpleasant." *LeGrand v. Area Res. for Cmty. & Human Servs.*, 394 F.3d 1098, 1101 (8th Cir. 2005) (sexual harassment case) (quotations omitted). In this case, Neudecker has not presented any evidence that the name-calling was frequent, physically threatening, or humiliating. The Demon note was an isolated occurrence. Viewed in the light most favorable to Neudecker, the record does not establish that the disability-based harassment was sufficiently severe or pervasive to deprive him of his right to enjoy his home. Accordingly, Neudecker has failed to establish the fourth element of his prima facie case. *Cf. Peterson*, 406 F.3d at 524; *LeGrand*, 394 F.3d at 1102-03.

Neudecker has also failed to demonstrate that Boisclair knew or should have known about but failed to respond to his complaints of harassment. Neudecker admits Boisclair demanded that one of the children of whom he complained apologize to him in person; arranged a mediation between Neudecker and a tenant who was bothering him; prohibited children from playing in areas where they were likely to harass him; and, importantly, moved him to a different apartment away from the tenants who gave him the most difficulties. It is not, therefore, surprising that Neudecker conceded at his deposition that, short of physically restraining the tenants whom he accuses of harassing him, Boisclair made reasonable efforts to address his

5

concerns. In sum, the record is clear that Boisclair took prompt remedial action when Neudecker complained of harassment. For these reasons, Boisclair is entitled to summary judgment on Neudecker's disability harassment claims.[3]

**B.     Retaliation**

Neudecker asserts that Boisclair violated the FHA and the Rehabilitation Act by retaliating against him after he complained about alleged disability harassment. The FHA and the Rehabilitation Act prohibit retaliation against individuals asserting their rights guaranteed by those Acts. *Neudecker*, 351 F.3d at 363-64. In analyzing a motion for summary judgment, a court applies the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to retaliation claims. *See Neudecker*, 351 F.3d at 364 (citing *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir. 1999)). Under that burden-shifting framework, a plaintiff must first establish a prima facie case of retaliation. *Amir*, 184 F.3d at 1025. If the plaintiff establishes a prima facie case of retaliation, the burden then shifts to the defendant to proffer a legitimate non-discriminatory reason for the adverse action. *Id.* at 1025-26. Once the defendant establishes a legitimate non-discriminatory reason for the adverse action, the burden of production then shifts back to the plaintiff to show that the defendant's reason is a pretext for discrimination. *Id.* at 1026.

---

[3]     Neudecker also implied at oral argument that he believes he is entitled to recover under a disparate treatment theory. To establish a prima facie case of disparate treatment, Neudecker must demonstrate that similarly situated less- or non-disabled tenants were treated differently than he was. *See Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004) ("In disparate treatment cases, a similarly situated disabled individual is treated differently because of his disability than less- or non-disabled individuals."); *cf. Jacob-Mua v. Veneman*, 289 F.3d 517, 521-22 (8th Cir. 2002). Neudecker, however, has failed to come forward with any admissible evidence that he was treated differently than similarly situated less- or non-disabled tenants. In fact, he has not identified a single similarly situated less- or non-disabled tenant.

Boisclair argues that Neudecker has failed to demonstrate a prima facie case of retaliation. To establish his prima facie case, Neudecker must show: (1) that he engaged in a statutorily protected activity; (2) that an adverse action was taken against him, and (3) a causal connection between the adverse action and the protected activity. *Id.* at 1025.

1. *Protected activity*

Neudecker avers that he engaged in protected activity when he complained to Boisclair's agents and to the police about the harassment to which the other tenants subjected him. Although Neudecker has not proffered any evidence about when he complained about the harassment or of what precisely he complained, his affidavit can reasonably be read to aver that he made complaints to Boisclair and/or the police[4] about the Demon note, the instances where tenants called him "psycho," the phone calls, the doorbell ringing, the unspecified offensive gestures, the flashlight shining, and the window peeking.

Viewing the record in the light most favorable to Neudecker, Neudecker voiced opposition to acts that he reasonably and in good faith believed violated the FHA or Rehabilitation Act when he complained about the Demon note and tenants calling him "psycho." He has, therefore, satisfied his burden with respect to these complaints. *See Peterson*, 406 F.3d at 524 n.3; *Sherman v. Runyon*, 235 F.3d 406, 409-10 (8th Cir. 2000). On the other hand, Neudecker has not demonstrated that the rest of his complaints about tenant harassment were protected activities. He has not offered any evidence that he attributed the phone calls, doorbell ringing, unspecified offensive gestures, flashlight shining, or window peeking to his disability when he made these complaints. Nor has he offered evidence that he reasonably believed these

---

[4] Although Neudecker also filed a complaint with the U.S. Department of Housing and Urban Development (HUD) in December 1998, he does not rely on this complaint as a protected activity for purposes of his retaliation claims.

7

acts violated the law. Accordingly, Neudecker has failed to demonstrate that he engaged in protected activity by complaining about this conduct. *Cf. Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (holding that employee's complaint was not protected because no reasonable person could believe incident violated Title VII); *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1028-29 (8th Cir. 2002) (holding that employee had not engaged in protected activity when her complaints failed to attribute employer's actions to sex discrimination).

2.  *Adverse actions*

Turning to the second element of Neudecker's prima facie case, Neudecker claims that he received seven threats of eviction from Boisclair. He alleges that he received eviction threats on March 21, 1996; October 7, 1997; January 13, 1998; October 6, 1998; October 26, 1998; November 19, 1998; and September 29, 2000. Viewing the record in the light most favorable to Neudecker, a reasonable factfinder could conclude that Boisclair took adverse action against him. *See Neudecker*, 351 F.3d at 364. Accordingly, Neudecker has satisfied this element of his prima facie case.

3.  *Causal connection*

Finally, the Court turns to the issue of whether Neudecker has demonstrated that a causal connection exists between Boisclair's threats and Neudecker's protected complaints. To demonstrate a causal connection, Neudecker must proffer evidence that gives rise to an inference that a retaliatory motive influenced Boisclair's decision to threaten him with eviction. *Cf. Kipp v. Mo. Hw'y & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002). In limited circumstances, evidence of a temporal proximity between a protected activity and an adverse action may establish a causal connection. *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832-33 (8th Cir. 2002).

As discussed above, Neudecker has established only that his complaints about the Demon note and the instances where other tenants called him "psycho" were protected activities; he has failed to demonstrate that his complaints about any other conduct were protected. The Court therefore turns to whether the eviction threats were causally connected to his complaints about the Demon note and the instances where other tenants called him "psycho."

a.   March 21, 1996

Neudecker asserts that he received his first "reprisal threat" on March 21, 1996. According to Neudecker, Boisclair issued the threat because he allegedly "caus[ed] excessive police calls to the building" and harassed other tenants. Neudecker, however, has not offered any evidence about the content of his complaints to the police. He has therefore failed to satisfy his burden of demonstrating that the March 21, 1996 threat was causally connected to a protected complaint. Accordingly, the Court finds that this threat is not actionable.

b.   October 7, 1997

Boisclair made its second threat of eviction on October 7, 1997. Neudecker claims that Property Manager Sally Ruffenach made this threat after she had received a letter from Assistant Building Manager Fran Lubecke falsely accusing him of improper conduct. Neudecker argues that Lubecke sent this letter to Ruffenach because Neudecker reported that Lubecke's daughter was harassing him.

The Court finds that Neudecker has failed to satisfy his burden of demonstrating that the October 7, 1997, threat is causally connected to his protected activities. First, Neudecker has not provided the Court with any evidence about the conduct of which he complained. He has, therefore, failed to tie the threat to protected complaints. Second, even if the Court were to assume that the complaint about Lubecke's daughter was a protected activity, the only evidence

9

Neudecker offers of a causal relationship between his complaint and the eviction threat is a temporal connection. He alleges that Lubecke sent her letter about him to Ruffenach in October and that Boisclair, through Ruffenach, threatened him with eviction on October 7. Neudecker does not, however, identify when he engaged in protected activity, that is, when he made his complaint about Lubecke's daughter. Without some evidence of when he made his complaint, the Court cannot conclude that there is a sufficiently close temporal connection between that complaint and Ruffenach's threat to warrant a conclusion that Neudecker has satisfied his burden of establishing this element of his prima facie case. Moreover, the Court notes that even if Neudecker could establish that Lubecke was motivated by a desire to retaliate against him for complaining about her daughter, he must demonstrate that Ruffenach was similarly motivated when issuing the eviction threat. Accordingly, the October 7, 1997, threat is not actionable.

    c.    January 13, 1998

Neudecker claims that he received a third threat of eviction on January 13, 1998, during a mediation. He asserts that Ruffenach verbally threatened to evict him "for having mailed her letters complaining about other tenants harassing [him]."

Once again, Neudecker has failed to present any evidence that the letters Neudecker sent to Boisclair contained protected complaints. Moreover, although he alleges a causal relationship between the letters he sent Ruffenach and the threat of eviction, he has not supported his allegations with any evidence. There is no evidence in the record that Ruffenach directly stated that the threat was the result of his complaints, and Neudecker has not attempted to introduce circumstantial evidence of retaliatory motive, such as evidence of a close temporal relationship between the time he sent the letters and the time he received the threat. Consequently,

Neudecker has failed to demonstrate a causal connection between his protected activities and the January 13, 1998, threat. The threat is not actionable.

    d.      October 6, 1998

Neudecker received his fourth eviction threat on October 6, 1998. He claims that the building manager's son had been "target[ing] him for harassment," and that he complained about this behavior. He claims that, as a result, on or about September 26, 1998, the building manager sent Ruffenach a letter falsely accusing him of making verbal threats, physically harming other residents' children, and spitting on people. Shortly thereafter, on October 6, 1998, Ruffenach threatened to evict him.

Neudecker has failed to demonstrate a causal connection between his protected complaints and this threat for the same reasons he failed to demonstrate a causal connection with respect to the October 7, 1997, threat. He has not described the conduct of which he complained and has, therefore, failed to demonstrate that the October 6, 1998, threat followed a protected complaint. In addition, even if the Court were to assume that the threat followed a protected complaint, he has failed to identify when he made the protected complaint. As a result, the Court cannot conclude that he has demonstrated a sufficiently close temporal connection between the threat and his protected complaint to satisfy this element of his prima facie case. Because Neudecker does not offer any other evidence—either direct or circumstantial—of a causal connection, the Court finds that this threat is not actionable.

    e.      October 26, 1998

On October 26, 1998, Neudecker received his fifth eviction threat. He claims that he received this threat after another tenant complained to Boisclair that he was stalking her. Neudecker maintains that the tenant's complaint was based on an unfounded fear of him.

Neudecker's own averments with respect to this eviction threat reveal that there is no causal connection between a protected activity and the threat. By Neudecker's own admission, this threat was not prompted by one of his complaints, but instead by a complaint made by another tenant against him. The threat therefore is not actionable.

    f.    November 19, 1998

Neudecker alleges that he received a sixth threat of eviction on November 19, 1998, during a mediation that was called "to discuss the problems [he] had been having with other tenants." According to Neudecker, Ruffenach threatened to evict him during that mediation unless he agreed to certain conditions.

Although Neudecker claims that the meeting was held to discuss his complaints about other tenants and that the threat was made during that meeting as a result of those complaints, he offers no evidence supporting this conclusion. He has not, for instance, provided any evidence that the eviction threat followed shortly after he made protected complaints. Accordingly, this threat is not actionable.

    g.    September 29, 2000

Neudecker alleges that he was threatened with eviction for a seventh and final time on September 29, 2000. He maintains that one of Boisclair's agents "made a verbal threat to evict [him] in retaliation for [his] having filed a complaint about the building manager's son . . . harassing [him]."

For the same reasons Neudecker failed to satisfy his burden of demonstrating a causal connection with respect to the October 7, 1997, and October 6, 1998, threats, he has failed to establish a causal connection with respect to the September 29, 2000, threat. The record is devoid of any evidence of the substance of Neudecker's complaint about the building manager's

son. He has therefore failed to demonstrate that the threat is related to a protected complaint. In addition, even if the threat did follow a protected complaint, Neudecker has not offered any evidence that permits an inference that the threat was made out of a desire to retaliate. Accordingly, the September 29, 2000, threat is not actionable.

In sum, although Neudecker was threatened with eviction on multiple occasions, he has not submitted any evidence that the threats were causally connected to his protected complaints. Boisclair is therefore entitled to summary judgment on his retaliation claims. *Cf. Bradley v. Widnall*, 232 F.3d 626, 633 (8th Cir. 2000) (granting defendant's motion for summary judgment where plaintiff submitted nothing more than conclusory allegations of retaliation).

### III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Boisclair's motion for summary judgment [Docket No. 37] is GRANTED.

2. Neudecker's Complaint [Docket No. 1] is DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 7, 2005

   S/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge